UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Return Date:
December 12, 2007

-----------------------------------------------------------x

In re:

Chapter 11

CHATHAM SQUARE APARTMENTS LLC,

Case No. 1-07-45216 (CEC)

Debtor.

-----------------------------------------------------------x

## DEBTORS MEMORANDUM OF LAW IN OPPOSITION TO DUNBARTON LLC'S MOTION FOR CHANGE OF VENUE

This Memorandum of Law is respectfully submitted on behalf of Chatham Square Apartments LLC (the "Debtor") in opposition to the motion filed by Dunbarton LLC ("Dunbarton") seeking a transfer in venue from the Eastern District of New York to the District of New Jersey.

### PRELIMINARY STATEMENT

At its core, Dunbarton is improperly using the spectre of a proposed transfer involving the entire Chapter 11 case, to gain a perceived tactical advantage in connection with potential litigation over a failed pre-petition contract of sale. Dunbarton's protests aside, the Chapter 11 case was properly venued in Brooklyn to start with based upon the Debtor's long-standing principal place of business. There is no valid reason or necessity to transfer the case to New Jersey – in fact, such action would be counter-productive and detrimental to the overall interests of creditors.

A detailed factual response to Dunbarton's motion is contained in the accompanying Declaration of Joseph Cattan (the "Cattan Declaration"). This

Memorandum of Law will focus upon the legal factors and criteria for a transfer of a

bankruptcy case under 28 U.S.C. §§ 1408 and 1412, with references to the Cattan

Declaration as appropriate concerning the factual support to retain venue in Brooklyn.

## ARGUMENT

## DUNBAR'S MOTION TO TRANSFER
## VENUE SHOULD BE DENIED

Venue of a bankruptcy proceeding is governed by 28 U.S.C. § 1408, which

provides in relevant part that:

> a case under title 11 may be commenced in the district court
> for the district —
> (1) in which the domicile, residence, principal place of
> business in the United States, or principal assets in the United
> States, of the person or entity that is the subject of such case
> have been located for the one hundred and eighty days
> immediately preceding such commencement, or for a longer
> portion of such one-hundred-and-eighty-day period than the
> domicile, residence, or principal place of business, in the
> United States, or principal assets in the United States, of such
> person were located in any other district . . . .

As set forth in the Cattan Declaration, although the property is located in

New Jersey, the Debtor's principal place of business has always been in Brooklyn. The

existence of Brooklyn offices is reflected in the Dunbarton contract itself, all federal tax

filings, insurance certificates, rent collections and bank records. In fact, all management

and executive decisions are made in Brooklyn, making the filing eminently proper and

appropriate in the first instance.

The law governing motions to transfer of venue is well defined. Once the

Court determines that venue is properly within the judicial district in which the Chapter

11 case was filed, the Court must examine whether the pending case should be transferred to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.   Transferring venue of a bankruptcy case is not to be taken lightly, and the Court should exercise its power to transfer venue cautiously. *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002); *abrogated on other grounds* 317 B.R. 629 (Bankr. S.D.N.Y. 2002).  The Debtor's choice of venue is entitled to great weight, and the burden of proof to establish a proper basis for transferring venue rests with the movant, which must demonstrate by a fair preponderance of the evidence that a transfer to another district is warranted.  *Id.* at 386;   *In re Melgar Enterprises, Inc.*, 140 B.R. 43, 45 (Bankr. E.D.N.Y. 1992).

The criteria to be considered by the court in reviewing a motion to change venue were established by the Fifth Circuit in the seminal case, *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979); *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732 (1980), and include (i) proximity of creditors of every kind to the court; (ii) location of the Debtor's assets; (iii) proximity of the debtor to the court; (iv) proximity of witnesses necessary to the administration of the estate; and (v) the economic administration of the estate.

When reviewing the "interests of justice" test, the Court should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *In re Enron Corp.* 284 B.R. at 387.  None of these factors favor a transfer.

The first criterion, the proximity of the creditors to the Court, favors venue in Brooklyn. The secured debt of Dime Saving Bank dwarfs all other claims in the case and Dime's acceptance of venue in Brooklyn should be given great weight. Likewise, Gloucester City supports retention of the case here and is prepared to pursue acquisition of the Debtor's property in Brooklyn Bankruptcy Court.

By comparison, the non-insider debt is relatively small; while as a practical matter, the unsecured trade creditors have not directly participated in the case to date. Moreover, they are not expected to participate in the future, particularly since they stand to receive a 100% dividend no matter where the case is situated so long as the property can be sold expeditiously. Thus, if anything, the interests of unsecured creditors are advanced by maintaining the *status quo* and keeping the case in Brooklyn so as to allow the Debtor to pursue a sale without interruption.

Dunbarton itself is a disputed creditor, having no interest in the rights or concerns of other creditors. Obviously, it is seeking to preserve its own position as a potential litigant with the Debtor, and is using the venue motion as a potential obstacle to disrupt the sale process and gain an advantage in any ensuing litigation.

Falling back on the fact that the property and certain creditors are based in New Jersey, Dunbarton argues, without actual proof or the backing of other creditors, that a Brooklyn venue is prejudicial to the rights of creditors, noting that:

> By requiring [creditors] to participate in a relatively distant court, the Debtor obviously seeks to minimize their impact on the Debtor's restructuring efforts. *See, e.g. In re Columbia Western, Inc.*, 183 B.R. 660 (Bankr. D. Mass. 1995)("Creditors frequently find it difficult to finance an

4

> objection because of financial pressures caused by the filing
> of the case itself. Increasing the physical distance between
> those creditors and the forum may eliminate the ability of
> those creditors to object.").

Dunbarton motion papers at 14.

This argument is severely misplaced, as the facts in *Columbia Western* are wholly different from those in the instant case. In *Columbia Western*, the debtor filed in Massachusetts, and the United States Trustee argued that venue was properly in Oregon where the debtor's assets and principal place of business were located just two days before the bankruptcy petition was filed. The sudden emergence of a Massachusetts proceeding was found to cause actual prejudice to Oregon creditors who were located across the entire country.

Here, of course, the Debtor's presence in Brooklyn did not materialize within days of the filing. Moreover, the Court is faced with a choice of the case being administered in Brooklyn, New York or Camden, New Jersey. Bankruptcy counsel for the Debtor, and indeed for Dunbarton, are located in Manhattan, a short subway, bus or taxi ride away. Access to Brooklyn from New Jersey is easy both by car and train. Conversely, the Court in Camden is not as accessible from New York, and requires either driving some 90 miles, or taking the train to Philadelphia and a taxi from there. Furthermore, the primary participants in the case, Dime Savings and Gloucester City, do not object to a Brooklyn venue. It is their convenience which should control, not that of Dunbarton.

Thus, this is hardly a case where creditors are being substantially prejudiced by their distance from the original court. As several courts have commented,

> Where a transfer would merely shift the inconvenience from one party to the other or where after balancing all factors, the equities lean but slightly in favor of the movant, the plaintiff's choice of forum should not be disturbed.

*In re Legend Industries, Inc.*, 49 B.R. 935, 938 (Bankr. E.D.N.Y.); *In re Enron Corp.*, 284 B.R. at 386-87; *In re Great American Resources, Inc.*, 85 B.R. 444, 445-56 (Bankr. N.D.Oh. 1988).

While the property is located in New Jersey, the third and fourth criteria, the location of the debtor and of key witnesses, favor retaining the case in Brooklyn. It is respectfully submitted that with the imminent prospect of a sale, the proximity of the Debtor's investors and financial books and records within the Eastern District of New York is far more important to the orderly administration of this proceeding, than the mere location of the Debtor's real property in New Jersey.

Moreover, the "most important" consideration in examining venue motions is the economic administration of the estate. *In re Commonwealth Oil Refining Co.*, 596 F.2d at 1247; *In re Melgar Enterprises, Inc.*, 140 B.R at 48. In this instance, the costs of administration in New Jersey will likely be substantially higher than those in New York. Indeed, there is little point in "taking the show on the road", when this Court has already conducted various hearings and is more than capable of overseeing a sale and any claims objections involving Dunbarton.

The interests of justice also mandate retaining venue in the Eastern District. Dunbarton argues that considerations of local politics and law require that the Chapter 11 proceeding be moved to New Jersey, citing *In re Standard Tank Cleaning Corp.*, 133 B.R. 562 (Bankr. E.D.N.Y. 1991). In that case, the Hon. Conrad B. Duberstein granted a motion to change venue based, in part, on the pendency of "major litigation" by the State of New Jersey over alleged violations of the State's environmental laws by the Debtor. *Id.* at 569[1]. No such important State or Local concerns have been identified in the instant case. Importantly, the Debtor is not a party to Dunbarton's litigation with Gloucester City. Furthermore, the issues presented between the Debtor and Dunbarton involve questions of contract interpretation that will not necessarily require extensive discovery or fact-finding. No suggestion is made by Dunbarton that there are complex or nuanced differences between New York and New Jersey law on contract interpretation. Bankruptcy courts routinely decide issues of state law, and it is not unusual for New York bankruptcy courts for determine issues involving New Jersey law. Moreover, it is common for this Court to oversee the sale of property located in New Jersey.

In fact, Judge Duberstein's decision denying a motion to change venue in *In re Melgar Enterprises, Inc.*, 140 B.R. 43, 45 (Bankr. E.D.N.Y. 1992), is far more closely analogous to the instant case than is his holding in *Standard Tank Cleaning.* In *Melgar*, the debtor's sole asset consisted of real property in Illinois. Noting that there were no special issues of law or public policy which mandated moving the case to

---

[1] It is important to note that, unlike the instant motion, the motion to change venue in *Standard Tank Cleaning* was filed by the State itself, and was supported by the Official Committee of Unsecured Creditors and the Debtor's secured creditor.

Illinois, Judge Duberstein based his decision to retain the case in New York on the facts that the principals of the debtor, as well as the debtor's books and records, were located within on Long Island, and that the administration of the case would be facilitated by their proximity to the Court.

Dunbarton also argues that the interests of justice test requires changing venue to prevent forum shopping, citing to *In re Éclair Bakery Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000).  This is an absurd contention, as it is Dunbarton and not the Debtor which is forum shopping.  In *Éclair Bakery*, the debtor filed three petitions in the Eastern District of New York, each of which was dismissed, the last with a detailed finding of bad faith and containing an injunction barring future filing.  The debtor then filed in the Southern District of New York, apparently in the hope that the Court would overlook the earlier rulings.  Instead, the Court held that the debtor was forum shopping, and that there was no basis whatsoever for venue to lie in the Southern District. Obviously, these types of facts are not presented here.  If anything, Dunbarton is attempting to obtain some perceived litigation advantage by moving the case to New Jersey.  This Court should reject this effort, and keep the case here; where it rightfully belongs.

## **CONCLUSION**

Dunbarton's motion to transfer venue should be denied.


Dated: New York, New York
      December 07, 2007


                      Respectfully submitted,

                      FINKEL GOLDSTEIN
                      ROSENBLOOM & NASH, LLP
                      26 Broadway, Suite 711
                      New York, New York 10004
                      (212) 344-2929


      By:     _____
                      Kevin J. Nash (KJN 6274)
                      A Member of the Firm